2020 IL App (1st) 182241-U

THIRD DIVISION
December 23, 2020

No. 1-18-2241

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL
DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 16799 |
| | ) | |
| BARRETT ADAMS, | ) | Honorable |
| | ) | Arthur F. Hill, Jr., |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Howse and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*: We find that defendant's convictions were supported by sufficient evidence, but he was not eligible for an extended-term sentence for aggravated fleeing and eluding. We vacate defendant's sentence of four years' imprisonment and resentence him to a term of three years' imprisonment.

¶ 2    Following a jury trial, defendant Barrett Adams was convicted of armed habitual criminal and aggravated fleeing and eluding a police officer (aggravated fleeing and eluding). The trial court sentenced defendant to a term of 14 years' imprisonment for the armed habitual criminal conviction and 4 years' imprisonment for the aggravated fleeing and eluding conviction, to be

served concurrently. Defendant filed a timely notice of appeal to this court. On appeal, defendant contends that there was insufficient evidence to support his convictions and the trial court erred in sentencing him to an extended-term sentence for aggravated fleeing and eluding. For the following reasons, we affirm defendant's convictions, but vacate his four-year extended term sentence for the aggravated fleeing and eluding conviction and impose a three-year sentence instead.

¶ 3                                    I. BACKGROUND

¶ 4        Following an incident in an alley between a gas station and a liquor store involving a possible robbery and a subsequent high-speed chase with police on September 22, 2015, defendant was apprehended and charged by indictment with armed robbery, armed habitual criminal, armed violence, aggravated fleeing and eluding, possession of a controlled substance with intent to deliver, four counts of unlawful possession of a weapon by a felon (UUWF), six counts of aggravated unlawful use of a weapon (AUUW), and aggravated unlawful restraint. The State subsequently *nolle prosequi* all charges except armed robbery, armed habitual criminal, armed violence, and aggravated fleeing and eluding.

¶ 5                                    A. Jury Trial

¶ 6        At defendant's jury trial, Dywan Macon testified that at approximately 3 a.m. on September 22, 2015, he was walking home and stopped to talk with a group of friends at a BP gas station located near the intersection of Roosevelt and Hamlin in the City of Chicago. A dark-colored car pulled up to the alley between the gas station and a nearby liquor store. The driver exited the car and approached defendant and his friends and asked if they could make change for some money. Macon had the money and agreed to make change. As Macon was giving the man

the money, a police car drove by. The man and Macon walked further down the alley because "[the driver] saw the police as he was finna give [Macon] the change."

¶ 7        According to Macon, once in the alley, the man reached down to his ankle and pulled out a gun. Macon "could tell it was a firearm," even though he was nervous. Macon gave the man all of his money, which was between $100 and $200. The man then told Macon to run. Macon ran out of the alley and observed two police officers speaking with his friends. Another officer pulled up to the curb and asked Macon why he was running. Macon responded that he had just been robbed and pointed to the car in the alley and stated, "he right there."

¶ 8        Macon testified that he was not able to identify the person who robbed him. A video from the liquor store's security camera was published to the jury. Macon viewed the video and testified that he could identify himself and it showed the events he described, but he could not identify the individual who robbed him. On cross-examination, Macon testified that he did not know that he lived in the same six-unit apartment building as defendant, and learned this only after the police told him.

¶ 9        Chicago Police Officer Alberto Zayas testified that he and his partner were in uniform and driving a marked police vehicle on patrol in that area when they observed other officers conducting a street stop. As Zayas approached, he was flagged down by Macon, who stated that he had been robbed by a man with a gun in the alley. Macon pointed behind the liquor store and indicated the man was in a black vehicle. Zayas drove behind the liquor store and observed a black vehicle. He attempted to conduct an investigatory stop, but the vehicle drove away. Zayas testified that the vehicle "took off" down the alley, "continuing through the intersection to where it reached Harding making a left turn to go southbound continuing at a high rate of speed down

Harding disregarding several stops signs," until it reached 16th Street, where it turned left and continued eastbound, "again disregarding several stop signs."

¶ 10     The vehicle then turned left on Springfield, traveling northbound, and continued to travel at a high rate of speed. Zayas testified that they pursued the vehicle with their police vehicle's lights and sirens activated, but the black vehicle only increased its speed and did not slow down. He did not recall which specific stop signs the vehicle failed to obey, but testified that the vehicle failed to obey any of them. The speed ranged from 40 to 60 miles per hour through residential streets.

¶ 11     Zayas testified that while the officers were following the vehicle "very closely" on Springfield, he observed the driver toss an object out of the passenger window near the middle of the block. Zayas testified that the police vehicle's spotlights were aimed at the back of the black vehicle and he could "clearly see through the back windshield, the back glass, and you could see the subject." Zayas testified that he observed that the driver "threw it out with his right hand and went across the passenger and out the window."

¶ 12     The vehicle continued north on Springfield and crossed Roosevelt, where it reached a cul-de-sac before a field and Crenshaw. The vehicle cut through the field and stopped, at which point the driver exited the vehicle and fled on foot towards Crenshaw. Zayas detained the passenger, a female, while his partner pursued the driver on foot. His partner returned shortly with defendant in custody. Zayas identified defendant as the driver he had observed in the vehicle and noted that he was wearing the same clothes and was sweating and breathing heavily.

¶ 13     Zayas searched defendant's clothing and from his jacket pocket Zayas recovered a baggie containing 66 small clear baggies with a white powder substance and 13 baggies with a crushed

green substance, which he suspected to be crack cocaine and cannabis, respectively. Zayas also recovered $178 in cash from defendant. Zayas inventoried these items as evidence.

¶ 14    Zayas identified video footage from security cameras at the liquor store showing his patrol car and the other patrol car stopped near the gas station and liquor store, and then his vehicle approaching the alley. He also identified pod videos from street cameras showing portions of the chase along Springfield and when the black vehicle went through the cul-de-sac and stopped in the field, and then when Zayas was detaining the passenger and his partner returned with defendant.

¶ 15    Zayas testified that while he was detaining the passenger and defendant at Springfield and Crenshaw, other officers arrived and he directed them to relocate to the location where he observed defendant toss the gun, "the 1232, 36, 38 area of Springfield."

¶ 16    Former Chicago police officer Javier Delrio testified that he was on patrol on the night of September 22, 2015, when he and his partner received a call for assistance with a car chase. They caught up to the chase near Crenshaw and Springfield, which is where the chase had ended. At the scene, he observed a black Ford Taurus, Officer Clark walking back with an arrestee, and a black female. Officer Zayas informed Delrio that he "saw an object fly out the window and told us where to find that object." Delrio started "tracing back" along the chase route using their headlights and spotlight and ended up at "1239 Springfield" where they noticed a shiny object on the ground. Delrio and his partner exited their patrol car and confirmed it was a gun, and then radioed for an evidence technician. He testified that the gun was black and silver. Delrio testified that approximately five minutes passed from the time he received the radio call about the chase until the time he found the gun. He did not observe anyone else in the area where they found the

gun. He waited approximately one and a half to two hours at that location for the evidence technician to arrive and collect the gun.

¶ 17    Chicago police officer and evidence technician Stephen O'Connell testified that he received a call at 3:50 a.m. on September 22, 2015, directing him to 1239 Springfield. When he arrived at approximately 5 a.m., he spoke with crime scene protection officers Delrio and Osario and they directed him to the handgun in the street. O'Connell testified that the gun was easy to see on the street. Wearing gloves, O'Connell secured the weapon into evidence and then went to the liquor store location to take photographs of the area. He returned to the police station and inventoried the evidence, swabbed the gun to preserve any potential DNA evidence, and secured it in a locked location for further testing. At trial, he identified the gun, the gun magazine, and two unfired bullets.

¶ 18    Officer Nancy McDonagh, a drug chemistry analyst for the Illinois State Police Forensic Science Center, testified as an expert in forensic narcotics analysis for the State. McDonagh tested and weighed the white substance found in the 60 baggies collected from defendant and determined that they contained 5.1 grams of cocaine.

¶ 19    Defendant moved for a directed verdict, arguing, *inter alia*, that there was a lack of specific testimony that defendant violated two traffic signals because Zayas could not remember which intersections had traffic signals. The trial court denied the motion.

¶ 20    The parties stipulated before the jury that if called to testify, Illinois State Police forensic scientist Joseph Calvo would testify that he processed the gun magazine collected into evidence for latent fingerprints, but found no latent impressions suitable for comparison. They further stipulated that defendant had previously been convicted of two qualifying felony offenses.

¶ 21 Defendant presented the following stipulation in his case-in-chief: if called to testify, Chicago police detective Delores Myles would state that she interviewed Macon on September 22, 2015, who informed her that "the offender approached Dywan Macon and asked for a light," but "at no time during the interview did Dywan Macon state that the offender approached him and asked for change." Defendant also presented into evidence by way of stipulation the audio recording between the police officers and the Office of Emergency Management and Communication dispatchers from September 22, 2015, between 3:12 a.m. and 3:16 a.m. as they responded to the incident. The audio recording was played for the jury.

¶ 22 Following closing arguments and jury instructions, the jury acquitted defendant of armed robbery and armed violence, but convicted him of armed habitual criminal and aggravated fleeing and eluding.

¶ 23 Defendant filed a motion for a new trial, which the trial court denied. At sentencing, the trial court sentenced defendant to 14 years' imprisonment for the armed habitual criminal conviction, a Class X offense, and an extended term of 4 years' imprisonment for the aggravated fleeing and eluding conviction, a Class 4 offense, to be served concurrently. The trial court denied defendant's subsequent motion to reconsider sentence. Defendant filed a timely notice of appeal.

¶ 24 I. ANALYSIS

¶ 25 A. Sufficiency of the Evidence

¶ 26 On appeal, defendant challenges the sufficiency of the evidence supporting his armed habitual criminal and aggravated fleeing and eluding convictions.

¶ 27 When examining a challenge to the sufficiency of the evidence supporting a conviction, we must view the evidence in the light most favorable to the State to determine whether a

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). We draw all reasonable inferences in favor of the State. *People v. White*, 2017 IL App (1st) 142358, ¶ 14. We also defer to the trier of fact's determinations regarding witness credibility, how to weigh competing evidence, and what inferences to draw from the evidence. *People v. Scott*, 2020 IL App (1st) 180200, ¶ 39 (citing *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001)). As such, "we will not overturn a conviction unless the evidence is so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt of the defendant's guilt." *Id*

¶ 28                                    1. Armed Habitual Criminal

¶ 29        To prove a defendant committed the offense of armed habitual criminal, the State is required to establish beyond a reasonable doubt that the defendant: "(1) possessed a firearm; and (2) had been convicted two or more times of certain offenses as enumerated in the statute." *People v. Jones*, 2019 IL App (1st) 170478, ¶ 26 (citing. 720 ILCS 5/24-1.7(a) (West 2014)).

¶ 30        Here, the parties stipulated that defendant had two prior convictions for qualifying offenses. The only issue he contests on appeal is whether the State proved that he possessed the handgun.

¶ 31        Possession of a firearm can be either actual or constructive. *People v. Faulkner*, 2017 IL App (1st) 132884, ¶ 39. "Actual possession is proved by testimony that the defendant exercised some form of dominion over the contraband, such as trying to conceal it or throw it away." *People v. Miller*, 2018 IL App (1st) 152967, ¶ 9. On the other hand, constructive possession requires proof that the defendant "(1) had knowledge of the presence of the weapon and (2) exercised immediate and exclusive control over the area where the weapon was found."

*Faulkner*, 2017 IL App (1st) 132884, ¶ 39. Knowledge may be shown by evidence of defendant's acts or statements which support an inference that he knew the contraband existed in the location where it was found. *Faulkner*, 2017 IL App (1st) 132884, ¶ 39. Control is shown where a defendant has the intent and capability to exercise control and dominion over the firearm or the area where it was found. *Id.*

¶ 32    Defendant contends that this is a case involving constructive possession of the gun, and that the State failed to show that he had knowledge of or exercised any control over the gun. He argues that the State failed to establish that he, and not the passenger of the car, was the individual in possession of the gun. He also asserts that Zayas' testimony was not believable. He further argues that the fact that the jury acquitted him of armed robbery and armed violence and sent a note during deliberations asking a question about possession demonstrates that there was insufficient evidence to prove he knowingly possessed the gun.

¶ 33    We conclude that, when viewed in the light most favorable to the State, the evidence established beyond a reasonable doubt that defendant knowingly possessed the gun. Contrary to defendant's assertion, this was not a case of constructive possession. Zayas observed defendant in actual physical possession of the handgun and observed him throwing it out of the vehicle's window. Zayas testified unequivocally and succinctly that he was following defendant's vehicle "very closely" on Springfield when he observed the driver—defendant—toss an object out of the passenger window when the vehicle was near the middle of the block. Zayas explained that his police vehicle's spotlights were aimed at defendant's vehicle, and he could "clearly see through the back windshield, the back glass, and you could see the subject." Zayas testified that he observed that the driver "threw it out with his right hand and went across the passenger and out the window." As such, defendant exercised dominion and control over the handgun by throwing

it away. *Miller*, 2018 IL App (1st) 152967, ¶ 9. This evidence also refutes defendant's claim that the State failed to prove that it was defendant, and not the passenger, who possessed the gun and threw it out of the window. In addition, Zayas's testimony was corroborated by Delrio's testimony. Delrio testified that he went to the location where Zayas observed defendant throw the gun and was able to locate the gun in the street, all within several minutes of Delrio receiving the radio call for assistance with the chase, and that there was no one else in the vicinity of the gun.

¶ 34    Although defendant argues that Zayas's testimony that he observed defendant throw the gun was incredible because Zayas was engaged in a high-speed chase at the time, Zayas testified that the speed ranged from 40 to 60 miles per hour. He did not give any indication that they were traveling too fast for him to make any observations. He also testified that the lighting from his police vehicle allowed him to see clearly into defendant's vehicle as the chase proceeded. We defer to the jury's assessment of Zayas's opportunity to view the defendant and the tossing of the gun. *Scott*, 2020 IL App (1st) 180200, ¶ 39; *Miller*, 2018 IL App (1st) 152967, ¶ 9. Defendant essentially urges this court to re-weigh Zayas testimony in place of the jury's considered judgment. However, "[k]nowledge and possession are factual issues, and we will not disturb the trier of fact's findings on these questions unless the evidence is so unbelievable or improbable that it creates a reasonable doubt as to the defendant's guilt." *Miller*, 2018 IL App (1st) 152967, ¶ 9. We will not second-guess the jury's assessment of this evidence. Moreover, our courts have found sufficient evidence to prove possession under similar circumstances. See *People v. Jones*, 2019 IL App (1st) 170478 (sufficient evidence of possession where officer observed the defendant reach into waistband and toss a black object during foot chase, and another officer went to that location and recovered a gun and no one else was in the vicinity). *People v. Love*,

404 Ill. App. 3d 784, 788 (2010) (actual possession shown by testimony that the defendant exercised some type of dominion over the contraband such as trying to conceal it); *Miller*, 2018 IL App (1st) 152967, ¶ 11 (possession established where officer observed the defendant reach behind a set of stairs while holding something and then run away empty-handed, even though officer did not observe exactly what was in the defendant's hand, and officer returned a few minutes later and found contraband).

¶ 35        Defendant's argument that he was acquitted of two other offenses and the jury posed a question related to possession during deliberations similarly provides no basis for finding insufficient evidence supporting his conviction. Armed robbery and armed violence involve different elements than those required for a conviction of armed habitual criminal. See *People v. Alejos*, 97 Ill. 2d 502, 508 (1983) (armed violence requires a showing that the defendant was armed with a dangerous weapon while committing a felony); 720 ILCS 5/18-1(a), 18-2(a)(2) (West 2014) (a defendant commits armed robbery when he "knowingly takes property *** by threatening the imminent use of force" while armed with a firearm). As such, the jury may have determined that defendant did not actually take any money from Macon, and thus acquitted him of armed robbery on that basis. The armed violence offense was predicated on defendant's possession of more than 5 grams of cocaine. Thus, as it relates to possession of the gun, acquittal of armed violence and armed robbery was not inconsistent with a guilty verdict on armed habitual criminal.

¶ 36        Moreover, defendant's reference to the jury's questions about possession during deliberations amounts to mere speculation and does not demonstrate that there was insufficient evidence supporting his conviction. Regardless, the jury was instructed on the law as it related to the elements of the offenses and that the State had to prove beyond a reasonable doubt each

element of the offense. Moreover, even where verdicts are inconsistent, this is not a viable ground for reversal. *People v. Allen*, 344 Ill. App. 3d 949, 958 (2003) (quoting *People v. Jones*, 207 Ill. 2d 122, 133-34 (2003) (" 'defendants in Illinois can no longer challenge convictions on the sole basis that they are legally inconsistent with acquittals on other charges.' "). "[E]ven with legally inconsistent findings, sufficiency-of-the-evidence review is a sufficient safeguard against jury irrationality." *People v. Reed*, 396 Ill. App. 3d 636, 648 (2009). Accordingly, we conclude that defendant's armed habitual criminal conviction was supported by sufficient evidence.

¶ 37                    2. Aggravated Fleeing and Eluding a Police Officer

¶ 38        The offense of simple fleeing and eluding requires the State prove that:

> "(1) the peace officer give the driver a signal to bring his vehicle to a stop, (2) the driver willfully fail or refuse to obey such a direction and flee or attempt to elude the officer, and (3) the signal to stop meet certain requirements, including the display of illuminated oscillating, rotating, or flashing red or blue lights that, when used in conjunction with an audible siren, indicate that the vehicle is an official police vehicle." *People v. Torrance*, 2020 IL App (2d) 180246, ¶ 15 (citing 625 ILCS 5/11-204(a) (West 2016)).

¶ 39        In order to elevate the offense to aggravated fleeing and eluding, the State must additionally prove one of the enumerated aggravated factors, which, pertinent to this case, is as follows: "after the signal is given, the driver's flight or attempt to elude involve disobeying two or more official traffic control devices." *Id.* (citing 625 ILCS 5/11-204.1(a)(4) (West 2016)).

¶ 40        At trial, Zayas testified that defendant's vehicle "took off" when Zayas tried to conduct an investigatory stop and turned from the alley onto Harding, traveling southbound, "continuing at a high rate of speed down Harding disregarding several stops signs," until it reached 16th

Street, where it turned left and continued eastbound "again disregarding several stop signs." The vehicle then turned left on Springfield and continued to travel at a high rate of speed. Zayas testified that they pursued the vehicle with their police vehicle's lights and sirens activated, but the black vehicle only increased its speed and did not slow down. He did not recall which specific stop signs the vehicle failed to obey, but testified that the vehicle failed to obey any of them. The speed ranged from 40 to 60 miles per hour through residential streets.

¶ 41        On appeal, defendant contends that the State failed to prove that he disobeyed two or more traffic control signals because the State failed to elicit evidence regarding the specific intersections or locations of stop signs that defendant disobeyed. Zayas merely testified that defendant disobeyed several stop signs while driving on Harding and 16th, but he could not recall which specific intersections. Relying on *People v. Murdock,* 321 Ill. App. 3d 175 (2001), and *People v. Lipscomb,* 2013 IL App (1st) 120530, defendant asserts that courts have required specific proof of every element of an aggravated fleeing and eluding charge.

¶ 42        However, these cases are inapposite. In contrast to the circumstances here, in *Murdock*, the court vacated the defendant's conviction of aggravated fleeing and eluding because there was absolutely *no* evidence presented at trial regarding whether the police officer was in uniform, as required by the statutory language of 625 ILCS 5/11-204(a) (1998). *Murdock,* 321 Ill. App. 3d at176-77. Here, there was not a complete lack of evidence as to any specific element of the aggravated fleeing and eluding charge defendant faced in the present case. Rather, Zayas testified that he directly observed defendant disobey "several" stop signs on Harding as defendant drove south toward 16th Street, and again disobey "several" stop signs as defendant drove on 16th Street to Springfield.

¶ 43    *Lipscomb* involved a charge of aggravated fleeing and eluding based on different aggravating criteria than the present case, that is, exceeding the posted speed limit by 21 miles per hour. *Lipscomb,* 2013 IL App (1st) 120530, ¶ 6. There, the officer merely testified about his own speed and not the defendant's speed, thus, it was unknown whether the officer was gaining on the defendant, staying even with him, or the defendant was pulling further ahead while the officer was traveling that speed, and therefore the trier of fact could not reasonably infer the defendant's speed beyond a reasonable doubt. *Id.* ¶¶ 7-9. In the case at bar, unlike the circumstances in *Lipscomb*, there was sufficient evidence for the jury to reasonably infer that defendant disobeyed "two or more official traffic control devices" based on Zayas's testimony that defendant disobeyed several stop signs on Harding and several stop signs on 16th Street.

¶ 44    Accordingly, we find defendant's conviction of aggravated fleeing and eluding was supported by sufficient evidence.

¶ 45                            C. Sentencing

¶ 46    In his final issue on appeal, defendant argues that his four-year sentence for aggravated fleeing and eluding should be reduced to three years because he was not eligible for an extended-term sentence because it was not the most serious class offense of which he was convicted. The State concedes that defendant should not have been sentenced to an extended term.

¶ 47    Aggravated fleeing or eluding is a Class 4 felony and carries a sentencing range of one to three years. 625 ILCS 5/11-204.1 (West 2014); 730 ILCS 5/5-4.5-45 (West 2014). Defendant was also convicted of armed habitual criminal, which is a Class X offense. 720 ILCS 5/24-1.7(b) (West 2014). Pursuant to section 5-8-2 of the Illinois Unified Code of Corrections, the court may impose an extended term sentence only on "the class of the most serious offense of which the offender was convicted" if the court finds a statutory factor making the offender eligible for an

extended term. 730 ILCS 5/5-8-2(a) (West 2014). Our supreme court has clarified that section 5-8-2 allows for imposition of an extended term only on the most serious class of offense for which the defendant has been convicted. "[T]the plain language of section 5-8-2(a) requires that, when a defendant has been convicted of multiple offenses of differing classes, an extended-term sentence may only be imposed for the conviction within the most serious class ***." *People v. Jordan*, 103 Ill. 2d 192, 206 (1984). Further, these offenses were not based on an unrelated course of conduct. See *People v. Coleman*, 166 Ill. 2d 247, 257 (1995) ("section 5–8–2(a) *** allow[s] for the imposition of extended terms on separately charged, differing class offenses that arise from unrelated courses of conduct regardless of whether the cases are separately prosecuted or consolidated."); *People v. Bell*, 196 Ill. 2d 343 (2001) (A defendant may be sentenced to an extended term on the lesser class offense only if the offenses were based on an unrelated course of conduct).

¶ 48    Because the offenses were part of a single course of conduct and the armed habitual criminal offense is a higher class offense, defendant could not be sentenced to an extended term on the Class 4 aggravated fleeing and eluding offense. As both defendant and the State request, defendant should be resentenced to a three-year term within the normal Class 4 sentencing range. Ill. St. Ct. Rule 615(b)(4) (eff. Jan. 1. 1970).

¶ 49                                    III. CONCLUSION

¶ 50    For the reasons stated, we affirm defendant's convictions of aggravated fleeing and eluding and armed habitual criminal. We vacate his extended term four-year sentence for the aggravated fleeing and eluding conviction, and instead sentence defendant to a term of three years' imprisonment.

¶ 51    Affirmed in part, reversed in part.