# Illinois Official Reports

## Appellate Court

---

### *People v. Miller*, 2018 IL App (1st) 152967

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DELFONTE MILLER, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-15-2967 |
| Filed | June 29, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CR-8642; the Hon. Rickey Jones, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; mittimus corrected and fines and fees order corrected. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Michael Gomez, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Koula A. Fournier, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.<br>Justice Hyman concurred in the judgment and opinion.<br>Justice Pucinski specially concurred, with opinion. |

**OPINION**

¶ 1      Following a bench trial, defendant Delfonte Miller was found guilty of possession of a controlled substance and sentenced to one year in prison. On appeal, he contends that he was not proven guilty, beyond a reasonable doubt, of possession of a controlled substance when the arresting officer did not see "exactly" what was in his hand and the contraband was recovered from a trash pile. He also contends that his mittimus must be corrected to accurately reflect the offense of which he was convicted and challenges the assessment of certain fines and fees. We affirm Miller's conviction and correct his mittimus and fines and fees order.

¶ 2      On the afternoon of May 9, 2015, Chicago police officer Esnaf Husic observed Miller in an abandoned building. Miller was "crouched down" near the entrance to the back of the building by a set of stairs. Husic could see Miller because the door to the building was gone. Husic observed as Miller reached behind the stairs with his right hand. Miller was holding a small item, but Husic could not tell "exactly" what it was. At this point, Miller "simultaneously" stood up, looked in Husic's direction, and "took off running." When Miller's hand moved away from the stair area, it was empty. Husic pursued Miller, losing sight of him briefly, and eventually took him into custody. After securing Miller, Husic returned to the abandoned house. Two to three minutes had passed. Husic looked at the place where he saw Miller reach and observed nine Ziploc baggies containing a white powdery substance, which he suspected was heroin. He saw "garbage everywhere" and described the baggies as "just laying there." Husic collected the baggies, inventoried them, and sent them for processing.

¶ 3      The parties stipulated that the contents of seven of the nine baggies tested positive for the presence of heroin and weighed 3.4 grams.

¶ 4      According to Miller, he was in an abandoned house and ran away when he noticed police officers. He denied having drugs in his hand. Miller identified a photograph of the "door of the house" that he was in front of. Miller claimed that he was not at the back of the building; rather, he was in the gangway close to the front. Miller acknowledged that a photograph of the building showed that the back door was missing. Before seeing the police, he heard " 'lights, lights,' " which is a "street term" to let people know that the police are nearby and which prompted him to run.

¶ 5      The parties stipulated that Miller had two prior convictions for possession of a controlled substance and one prior conviction for residential burglary.

¶ 6      The trial court found Miller guilty of possession of a controlled substance and sentenced him to one year in prison.

¶ 7      On appeal, Miller first contends that he was not proven guilty beyond a reasonable doubt of possession of a controlled substance when Officer Husic did not see what he had in his hand and recovered the contraband from a pile of trash. In other words, Miller contends the State failed to prove that he actually possessed any contraband.

¶ 8      When reviewing a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48. It is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. *People v. Bradford*, 2016 IL 118674, ¶ 12. A reviewing court will not substitute its judgment for that of

the fact finder on questions involving the weight of the evidence or the credibility of the witnesses. *Id.* This court will reverse a defendant's conviction only where the evidence is so unreasonable, improbable, or unsatisfactory that a reasonable doubt of defendant's guilt remains. *Id.*

¶ 9    "To support a conviction for possession of a controlled substance, the State must prove that the defendant had knowledge of the presence of the narcotics and that the narcotics were in the defendant's immediate and exclusive control." *People v. Tates*, 2016 IL App (1st) 140619, ¶ 19. A defendant's possession can be either actual or constructive. *Id.* Actual possession is proved by testimony that the defendant exercised some form of dominion over the contraband, such as trying to conceal it or throw it away. *People v. Love*, 404 Ill. App. 3d 784, 788 (2010). "A defendant's lack of control of the premises will not preclude a finding of guilt if the circumstantial evidence supports an inference that the defendant intended to control the contraband inside." *Tates*, 2016 IL App (1st) 140619, ¶ 20. Knowledge and possession are factual issues, and we will not disturb the trier of fact's findings on these questions unless the evidence is so unbelievable or improbable that it creates a reasonable doubt as to the defendant's guilt. *People v. Carodine*, 374 Ill. App. 3d 16, 25 (2007).

¶ 10    Here, taking the evidence in the light most favorable to the State as we must (*Brown*, 2013 IL 114196, ¶ 48), there was evidence from which a rational trier of fact could have found that Miller possessed the baggies of heroin based on Husic's testimony that (i) Miller had something in his hand as he reached behind the stairs, (ii) Miller did not have anything in his hand as he ran away, and (iii) nine baggies of suspect heroin were recovered from behind the stairs.

¶ 11    Miller argues that because Husic did not see "exactly" what he had in his hand, his conviction was based on the mere fact that he was observed in the vicinity of a trash-strewn area from which contraband was later recovered. But while Miller is correct that Husic did not see "exactly" what Miller was holding in his hand, Husic did observe Miller reach behind a set of stairs while holding something and then run away empty-handed. See *Love*, 404 Ill. App. 3d at 788 (actual possession is proved by testimony that the defendant exercised some form of dominion over the contraband, such as trying to conceal it). When Husic returned to the building two to three minutes later he observed nine baggies of suspect heroin. The fact that the building was abandoned was not fatal to the State's case when the evidence at trial established that Miller reached behind a set of stairs while holding something in his hand and baggies of heroin were later recovered from that area. See *Tates*, 2016 IL App (1st) 140619, ¶ 20 (the defendant's lack of control of a premises will not preclude a finding of guilt if the circumstantial evidence supports an inference that he intended to control the contraband inside). Possession is a factual issue, and this court will not disturb the trier of fact's finding on this issue unless the evidence is so unbelievable that it creates a reasonable doubt as to defendant's guilt (*Carodine*, 374 Ill. App. 3d at 25). This is not one of those cases. Moreover, Miller's theory of the case would have required the trier of fact to accept that Miller happened to place his hand behind a staircase in an abandoned building in the same spot as the contraband and leave behind an object, without knowing that the contraband was there. A trier of fact is not required to disregard the inferences that flow from the evidence or search out all possible explanations consistent with a defendant's innocence and raise them to a level of reasonable doubt. See *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60. We therefore affirm Miller's conviction for possession of a controlled substance.

¶ 12        Miller next contends that his mittimus, which incorrectly lists his offense as manufacture or delivery of a controlled substance, must be corrected to reflect the offense of which he was convicted, *i.e.*, possession of a controlled substance. The State concedes the error, and it is obvious that the mittimus must be corrected to reflect the trial court's judgment. Accordingly, pursuant to Illinois Supreme Court Rule 615(b)(1), we direct the clerk of the court to correct the mittimus to reflect that Miller was convicted of possession of a controlled substance.

¶ 13        Miller finally challenges the imposition of certain fines and fees. Miller acknowledges that he failed to challenge the imposition of these fines and fees before the trial court. These issues are, therefore, forfeited. See *People v. Smith*, 2018 IL App (1st) 151402, ¶ 4 (citing *People v. Hillier*, 237 Ill. 2d 539, 544 (2010)). Miller requests that we review his claims under the plain error doctrine.

¶ 14        We disagree with Miller that his challenge to the fines and fees order is reviewable under plain error. Miller does not claim that the trial court failed to provide a fair process for determining his fines and fees. Therefore, his complained-of errors do not affect substantial rights and are not reviewable under the plain error doctrine. *Smith*, 2018 IL App (1st) 151402, ¶ 5. However, given that the State has not argued that Miller forfeited his challenge to the fines and fees order, we will address the merits of his claims. *People v. Williams*, 193 Ill. 2d 306, 347-48 (2000) (rules of waiver and forfeiture apply to the State). Further, on direct appeal, the State typically does not argue forfeiture, a position consistent with the State's obligation to do substantial justice and to avoid burdening criminal defendants with assessments not properly imposed.[1] As waiver and forfeiture are limitations on the parties, not the court (*Maniez v. Citibank, F.S.B.*, 404 Ill. App. 3d 941, 948 (2010)), we elect to review the errors claimed by Miller. We review the imposition of fines and fees *de novo*. *People v. Bowen*, 2015 IL App (1st) 132046, ¶ 60.

¶ 15        The following assessments were improperly imposed: the $250 DNA analysis fee (Miller's DNA was already in the database) (*People v. Marshall*, 242 Ill. 2d 285, 303 (2011)); the $5 electronic citation fee (this fee applies only in traffic, misdemeanor, municipal ordinance, and conservation cases) (see 705 ILCS 105/27.3e (West 2014)); the $100 Methamphetamine Law Enforcement Fund fine and the $25 methamphetamine drug traffic prevention fund fine (Miller's conviction did not involve methamphetamine) (see 730 ILCS 5/5-9-1.1-5(b), (c) (West 2014)); and the $110 misdemeanor, business, or petty offense complaint filed fee (Miller's offense was a felony) (see 705 ILCS 105/27.2a(w)(1)(B)-(D) (West 2014)). These assessments totaling $490 are incorrect, and we direct the trial court to correct the fines and fees order accordingly.

¶ 16        Miller next contends that he is entitled to offset the fines assessed against him with his presentence custody credit. See 725 ILCS 5/110-14(a) (West 2014). Miller accumulated 132 days of presentence custody credit, and therefore, he is potentially entitled to $660 of credit toward his eligible fines.

¶ 17        But before we can calculate the presentence custody credit to which Miller is entitled, we must first determine which assessments, though labeled "fees," are actually fines as to which the presentence custody credit applies. In countless cases, we have held that the $25 state

_____

[1]The same analysis does not apply in cases involving collateral appeals as a defendant's attempt to raise such forfeited issues implicates the parameters of appellate jurisdiction. See *People v. Grigorov*, 2017 IL App (1st) 143274, ¶ 8; *People v. Griffin*, 2017 IL App (1st) 143800, ¶ 13.

police operations fee (see, *e.g.*, *People v. Brown*, 2017 IL App (1st) 150146, ¶ 36 (finding the state police operations assessment is a fine)), the $10 mental health court fee and the $5 youth diversion/peer court assessment (see, *e.g.*, *People v. Price*, 375 Ill. App. 3d 684, 698-701 (2007) (finding both the $10 mental health court fee and the $5 youth diversion/peer court assessment are fines)), the $5 drug court fee (*People v. Unander*, 404 Ill. App. 3d 884, 886 (2010) ("the $5 [drug court assessment] is actually a fine")), and the $30 Children's Advocacy Center assessment (*People v. Jones*, 397 Ill. App. 3d 651, 660-61 (2009) ("the Children's Advocacy Center charge is a fine rather than a fee")) are fines subject to offset by presentence custody credit.

¶ 18    Miller also argues the $10 probation and court services operations fee (705 ILCS 105/27.3a(1.1) (West 2014)) is actually a fine because it is imposed on all defendants "upon a judgment of guilty or grant of supervision" regardless of whether the probation department was utilized in each defendant's case. Although there is a split among the appellate districts as to the proper categorization of this assessment, we adhere to the view that it is a fee because it is compensatory in nature as it reimburses the State for costs of prosecuting a defendant. See *People v. Rogers*, 2014 IL App (4th) 121088, ¶¶ 37-39; *People v. Mullen*, 2018 IL App (1st) 152306, ¶¶ 54-56 (following *Rogers* and holding that this assessment is a fee when the probation office was involved in preparing a presentence investigation report). But see *People v. Carter*, 2016 IL App (3d) 140196, ¶¶ 56-57 (declining to follow *Rogers* and finding this assessment to be a fine regardless of whether the defendant actually utilized probation services). Here, the probation department prepared a presentence investigation report used at sentencing and we find this assessment to be properly categorized as a fee.

¶ 19    What remains to be done is to calculate the dollar amount of the credit to which Miller is entitled. The State asserts that this court need not calculate Miller's presentence custody credit because the clerk of the circuit court will apply the credit. We elect instead to calculate the credit here.

¶ 20    We have examined the current version of the order assessing fines, fees, and costs, which is a form order used by the circuit court clerk. The four-page order, containing more than 100 possible assessments, breaks down the categories of assessments into those offset by the $5 *per diem* credit and those that are not. The order contains a line for the total amount of assessments imposed and the number of days served in custody but does not have any line where the credit against fines to which the defendant is entitled can be entered. Instead, under the number of days served in custody, the order states: "Allowable credit toward fine *will be calculated*." (Emphasis added.) The order does not say when or by whom the credit will be calculated. This is an important omission as we cannot expect criminal defendants to calculate the maximum credit to which they are entitled by multiplying their days in custody by five, adding up the fines, and calculating the actual credit. We have seen some fines and fees orders where the trial judge has made the calculation on the face of the order and, in the absence of a revised order containing a line item for this calculation, we encourage this practice. It is important for criminal defendants to know, in addition to the date they are eligible to be released from custody, the financial ramifications of the sentence imposed as, at least in theory, they face efforts by the State to collect those assessments. See *Smith*, 2018 IL App (1st) 151402, ¶ 10 (discussing the lasting repercussions of unpaid assessments). Miller was assessed a total of $914 in fines. After deducting the fines erroneously assessed ($490) and allowing

credit for those assessments labeled fees, which we have determined are fines ($75), the total assessed fines are $349.

¶ 21 For the foregoing reasons, we affirm Miller's conviction. Pursuant to Illinois Supreme Court Rule 615(b)(1), we order that Miller's mittimus be corrected to reflect that he was convicted of possession of a controlled substance. We also order the circuit court to correct Miller's fines and fees order to reflect that the $250 DNA analysis fee, the $5 electronic citation fee, the $100 Methamphetamine Law Enforcement Fund fine, the $25 methamphetamine drug traffic prevention fund fine, and the $110 misdemeanor, business, or petty offense complaint filed fee are vacated. Per our discussion above, the circuit court should also grant Miller an additional credit of $75, leaving total fines of $349. Miller's maximum per diem credit ($660) offsets these fines in total.

¶ 22 Affirmed in part and vacated in part; mittimus corrected and fines and fees order corrected.

¶ 23 JUSTICE PUCINSKI, specially concurring:

¶ 24 I write this special concurrence to emphasize how strongly I feel that orders signed by judges must be complete and accurate. The judiciary was established to provide a meaningful way for citizens and the state to redress grievances. For citizens, it is the nonviolent way to resolve problems. For the state, it is the way to determine guilt or innocence and, where guilt is determined, to provide the proper penalty.

¶ 25 For the court system to have any credibility with the citizens we serve, the orders entered must be complete and accurate. Without those two fundamental elements the orders, which impair liberty or impose monetary penalties, are always suspect. It is, then, I believe imperative that every court take every precaution to assure that every signed written order completely and accurately reflects the findings of the court and the judgment of the judge. Where the orders are not complete or are inaccurate the judge, not the clerk of the court and not the defendant, must be accountable for signing a faulty order.

¶ 26 Incorrect, incomplete, or inaccurate orders go to the very foundation of the integrity of the judiciary. Wrong orders either give the impression that no one cares about the actual result of a trial, or worse, that no one really cares about what happens to a defendant. When a defendant is sentenced for one crime but his paperwork reflects some other crime his future may be irreparably harmed. When an order has the wrong monetary assessment or calculation it can cause financial burdens that are not only unfair but illegal to the party ordered to pay.

¶ 27 Judges should make sure that attorneys for both sides of every case review their final orders before signing them. Then, at the very least, the judge can have some assurance that the other two lawyers on the case have checked it out and can be expected to raise some objection in the case of error.

¶ 28 The clerk of the court is not an attorney and is, in fact, prohibited from practicing law. To assume that the clerk is responsible for reading, proofreading, and managing the myriad of issues on legal orders is putting the shoe on the wrong foot.