2021 IL App (1st) 190255-U

No. 1-19-0255

Order filed June 23, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 6504 |
| | ) | |
| BRODRICK GRIFFITH, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BURKE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction for unlawful use or possession of a weapon by a felon is affirmed over his contention that the State failed to prove beyond a reasonable doubt that he possessed a firearm.

¶ 2    Following a bench trial, defendant Brodrick Griffith was found guilty of two counts of unlawful use or possession of a weapon by a felon (UUWF), a violation of the Firearm Owners Identification (FOID) Card Act, and two counts of aggravated unlawful use of a weapon (AUUW). The trial court merged the counts into one count of UUWF and sentenced defendant to three years'

imprisonment. On appeal, defendant argues the State failed to prove beyond a reasonable doubt that he possessed a firearm. For the following reasons, we affirm.

¶ 3 Defendant was charged by indictment with UUWF (720 ILCS 5/24-1.1(a) (West 2018)) (counts I-II), a violation of the FOID Card Act (430 ILCS 65/2(a)(1) (West 2018); 430 ILCS 65/14(c)(3) (West 2018)) (count III), and two counts of AUUW (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5), (a)(3)(C) (West 2018)) (counts IV-V). Relevant here, count I alleged that defendant knowingly possessed a firearm on or about his person after having been previously convicted of felony manufacture and delivery of cannabis.

¶ 4 At trial, Chicago police officer Armando Salgado testified that around 2:41 p.m. on April 17, 2018, he and his partner, Officer Hernandez,[1] were in an unmarked police vehicle. Hernandez drove, and Salgado, who was dressed in civilian clothes with a police vest and "markers," was in the passenger seat. Salgado observed defendant, whom he identified in court, walking westbound in the street and into an empty lot. Defendant looked in the officers' direction, immediately turned, and walked eastbound while clutching his right waistband area. Salgado thought that defendant might be trying to conceal something, so he watched defendant. Hernandez turned the vehicle to follow defendant, who again looked in the officers' direction and then turned to walk westbound while holding his waistband. Hernandez turned the vehicle around, and defendant again looked in the officers' direction and walked eastbound.

¶ 5 Salgado exited the vehicle to conduct a field investigation because he believed that defendant was possibly armed. From 15 to 20 feet, Salgado observed defendant approach a woman in the empty lot and engage in a hand-to-hand transaction. Salgado approached defendant and

---

[1] Hernandez's first name does not appear in the report of proceedings.

defendant fled southbound. Salgado chased defendant from 15 to 20 feet and observed him grabbing his right waistband area.

¶ 6     At some point, defendant turned and Salgado lost sight of him for a couple seconds. Salgado then turned after defendant, and the two faced each other 10 to 15 feet apart. The area was empty except for a parked vehicle. Defendant stood behind the front of the vehicle so only his upper body was visible. He held "an object" and made a "low throwing motion" with his left hand. Salgado could not tell what that object was.

¶ 7     Salgado detained defendant and notified Hernandez of his observations. Hernandez then recovered a loaded .38-caliber semiautomatic chrome firearm from under the front tire area of the parked vehicle, just a couple feet from where defendant made the throwing motion. There was no debris or anything else on top of the firearm. The firearm, its magazine, and one bullet were inventoried.

¶ 8     On cross-examination, Salgado testified that he and Hernandez were patrolling an area with high gang and narcotic activity and were not looking for "a man with a gun" when they encountered defendant. Salgado did not see him holding a firearm at any point. After Salgado detained defendant, he directed Hernandez to where he observed defendant make the tossing motion. Salgado did not recall how much time elapsed before the firearm was recovered, but it did not happen "immediately." When asked if there was a lot of "junk" in the area where the firearm was recovered, Salgado responded, "I guess it depends on a person's definition of junk," but agreed the area was not "a well-manicured lawn." Defendant did not admit to owning the firearm. Cannabis was recovered on defendant's person.

¶ 9	On redirect examination, Salgado testified that after he directed Hernandez to where he saw defendant make a tossing motion, officers secured the area so only they could access it. No other objects resembled a firearm in the area where the weapon was recovered.

¶ 10	The State entered a certified copy of defendant's 2017 conviction for felony manufacture and delivery of cannabis.

¶ 11	The trial court found defendant guilty on all counts. In so doing, the court found that Salgado testified credibly that he observed defendant make evasive maneuvers and engage in a suspect transaction. Moreover, Salgado explained that he pursued defendant, who changed direction a number of times, until Salgado observed defendant toss an object underneath a vehicle, where the officers recovered a firearm. Thus, there was "strong circumstantial evidence" to find defendant guilty beyond a reasonable doubt.

¶ 12	Defendant filed a motion for a new trial, which, following argument, the trial court denied. The court noted that Salgado testified that although he lost sight of defendant momentarily, he saw defendant throw an object and a firearm was recovered. Following a hearing, the court merged the counts into count I for UUWF and sentenced defendant to three years' imprisonment. The court subsequently denied defendant's motion to reconsider sentence.

¶ 13	Defendant argues on appeal that we should reverse his conviction because the State failed to prove beyond a reasonable doubt that he possessed the firearm. Defendant contends Salgado's testimony was "unbelievable," and even if Salgado's testimony were believed, it is insufficient to meet the State's burden.

¶ 14	The State must prove each element of an offense beyond a reasonable doubt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). The relevant question on a challenge to the sufficiency

of the evidence is whether, after viewing the evidence in a light most favorable to the State, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* Under this standard, it is for the trier of fact to resolve conflicts in evidence, weigh the evidence, and draw inferences from the evidence. *Id.* A reviewing court may not substitute its judgment for that of the trier of fact on matters regarding the weight of the evidence or the credibility of the witnesses. *Id.* at 224-25. All reasonable inferences are allowed in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42. The trier of fact is not required to disregard inferences that flow normally from the evidence, nor seek all possible explanations consistent with innocence and elevate them to reasonable doubt. *People v. Newton*, 2018 IL 122958, ¶ 24. Accordingly, a conviction will not be overturned unless the evidence is so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt of the defendant's guilt. *People v. Brown*, 2013 IL 114196, ¶ 48.

¶ 15     To prove defendant committed UUWF, the State was required to establish that he (1) knowingly possessed a firearm or firearm ammunition on or about his person, and (2) was previously convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2018). Defendant solely challenges whether the State proved that he possessed the firearm recovered under the parked vehicle.

¶ 16     Whether a defendant possessed contraband is a factual issue, which we will not disturb unless the evidence is so unbelievable that it creates a reasonable doubt as to the defendant's guilt. *People v. Miller*, 2018 IL App (1st) 152967, ¶ 11. Possession can be either actual or constructive. *Id.* ¶ 9. Relevant here, "[a]ctual possession is proved by testimony that the defendant exercised some form of dominion over the contraband, such as trying to conceal it or throw it

away." *Id.* Actual possession does not, however, require "present personal touching of the illicit material." *People v. Givens*, 237 Ill. 2d 311, 335 (2010).

¶ 17    "Because possession is often difficult to prove directly, proving possession frequently rests upon circumstantial evidence." *People v. Love*, 404 Ill. App. 3d 784, 788 (2010). A case based on circumstantial evidence does not require that each link in the chain of circumstances be proven beyond a reasonable doubt. See *id.* Instead, it is sufficient if, taken as a whole, all the evidence satisfies the trier of fact that a defendant is guilty. *Id.*

¶ 18    Here, Salgado testified that he observed defendant look toward the officers, immediately turn, and walk in a different direction. While evading the officers, defendant clutched his waistband area and changed direction a total of three times. When Salgado witnessed defendant engage in what appeared to be a hand-to-hand transaction and approached defendant, he fled, still holding his waistband area. Defendant entered an empty lot, stood behind the front of a parked vehicle while facing Salgado and holding "an object," and made a "low throwing motion" with his left hand. After detaining defendant, officers recovered a firearm from under the front tire area of the parked vehicle just a couple feet from where defendant made the throwing motion.

¶ 19    After viewing the evidence in a light most favorable to the State, we conclude that the evidence established beyond a reasonable doubt defendant's possession of the recovered firearm. Based on Salgado's testimony concerning defendant's flight from the officers, making a tossing motion with an object, and the recovery of a firearm from the area in which defendant appeared to toss said object, the trial court could have reasonably found defendant actually possessed the firearm.

¶ 20    To the extent defendant argues it is incredulous that he would have engaged in a hand-to-hand transaction and tossed a firearm if he knew officers were watching him, and that the officers should have found the firearm more quickly if it were actually in plain view, we reiterate that it is the trier of fact's responsibility to determine witness credibility. *Siguenza-Brito*, 235 Ill. 2d at 224-25. The testimony of a single witness, if positive and credible, is sufficient to convict. *People v. Gray*, 2017 IL 120958, ¶ 36. Here, the trial court found Salgado's testimony to be credible, and we must defer to that determination. See *id.*; *Siguenza-Brito*, 235 Ill. 2d at 224-25.

¶ 21    Nor are we persuaded by defendant's contentions regarding the perceived lack of evidence of his possession of the recovered firearm. It is settled law that if witnesses' testimony is otherwise credible, the State is not required to present additional physical evidence that links a defendant to a firearm. *People v. Campbell*, 2019 IL App (1st) 161640, ¶ 33. Thus, the State did not need to present forensic evidence, or evidence concerning how long the firearm was under the parked vehicle or whether any other objects were around it. The trial court heard that Salgado saw defendant standing behind the vehicle, defendant made a low tossing motion, and the officers soon after recovered a firearm from that area. This circumstantial evidence was sufficient to establish defendant's possession, even where Salgado did not see the weapon in defendant's hand. See *Love*, 404 Ill. App. 3d at 788.

¶ 22    Finally, although defendant posits that his flight from the officers could also be explained by his possession of cannabis, it was not unreasonable for the trial court to consider his flight as evidence of his guilt of possessing a firearm. Flight from police officers is a circumstance from which the trier of fact can infer consciousness of guilt. See *People v. Hart*, 214 Ill. 2d 490, 518-19 (2005). Moreover, "the trier of fact is not required to accept any possible explanation compatible

with the defendant's innocence and elevate it to the status of reasonable doubt." *Siguenza-Brito*, 235 Ill. 2d at 229. Therefore, defendant's arguments attacking the sufficiency of the evidence are unpersuasive.

¶ 23    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 24    Affirmed.