2022 IL App (1st) 1210783-U

FIFTH DIVISION
SEPTEMBER 9, 2022

No. 1-21-0783

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CR 8926 |
| | ) | |
| DIMITRI WOULDFOLK, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Delort and Justice Mitchell concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The defendant's conviction for aggravated unlawful use of a weapon is affirmed where a rational trier of fact could find that he possessed a weapon without a valid Firearm Owners Identification card and concealed carry license.

¶ 2    Following a bench trial in the circuit court of Cook County, the defendant-appellant, Dimitri Wouldfolk, was found guilty of aggravated unlawful use of a weapon (AUUW) and was sentenced to 371 days' imprisonment. On appeal, the defendant argues that the State failed to

prove, beyond a reasonable doubt, that he unlawfully possessed a firearm. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 3                                                 BACKGROUND

¶ 4      The defendant was charged by indictment with three counts of AUUW arising from an incident that occurred on July 4, 2020. The State proceeded on one count of AUUW predicated on possessing an uncased, loaded, and immediately accessible firearm on or about his person, while not on his property or another's property with permission, without a concealed carry license, and also, that the defendant lacked a valid Firearm Owners Identification (FOID) card. (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5), (a)(3)(C) (West 2020)).

¶ 5      Chicago police officer Christopher Lockhart testified that on July 4, 2020, at 1:48 am, he was patrolling the 5900 block of West Huron Street with Officer Romero and Sergeant Criscione, in uniform and in an unmarked vehicle.[1] Officer Lockhart observed a group of people standing in the street. He identified the defendant in court as one of the individuals in the group. From the front passenger seat, approximately 15 feet away from the defendant, Officer Lockhart observed the defendant grab his waistband and walk to a parked vehicle. The defendant removed a black object from his waistband and "crouched down"; when he stood back up, the object was no longer in his hand. Officer Lockhart testified that the defendant then placed the black object in the rear passenger side tire of the parked vehicle.

¶ 6      After the defendant walked away from the parked vehicle, Officer Lockhart exited his vehicle and walked over to the parked vehicle where he had just seen the defendant, to "see what the object was." In the rear passenger side wheel well of the parked vehicle, Officer Lockhart

---

[1]The report of proceedings does not contain Officer Romero's or Sergeant Criscione's first names.

discovered a black revolver with black tape on the handle. He handed the firearm to Sergeant Criscione and approached the defendant, who then fled on foot. Officer Lockhart pursued the defendant on foot and eventually detained him on the 5800 block of West Huron Street.

¶ 7    Officer Lockhart identified People's Exhibit No. 1 as the firearm he recovered from the wheel well of the parked vehicle. It contained five rounds in the cylinder at the time he recovered it.

¶ 8    The State published a portion of People's Exhibit No. 2, Officer Lockhart's body camera footage, which is included in the record on appeal and which we have reviewed. In court, Officer Lockhart narrated the events depicted in the video.[2]

¶ 9    When the footage begins, Officer Lockhart is inside the police vehicle; after approximately one minute, Officer Lockhart exits the vehicle. In court, Officer Lockhart explained that he did so after observing the defendant. In the footage, Officer Lockhart approaches a parked vehicle; two people (who are not the defendant) can briefly be seen standing on the grass behind and to the right of the vehicle. Officer Lockhart reaches into the rear passenger side wheel well of the parked vehicle, and retrieves a black firearm with black tape on the handle. Officer Lockhart hands the firearm to his Sergeant Criscione, then immediately turns towards the street and runs after the defendant, who is running down the middle of the street. At the 1:56 time mark in the video, the defendant trips, falls to the ground, and is detained by Officer Lockhart. Officer Lockhart then walks the defendant back in handcuffs, and another police officer drives the unmarked police

_____

[2]During pretrial proceedings, the trial court stated that it would not consider the audio component of any videos unless the party proffering the video also provided a transcript. At trial, the State did not produce a transcript for People's Exhibit No. 2 and the audio was not played.

vehicle up to them. Officer Lockhart hands the recovered firearm to Sergeant Criscione and subsequently places the defendant in a police van.

¶ 10    On cross-examination, Officer Lockhart testified the unmarked police vehicle he was riding in had municipal "M" license plates. He could not recall exactly how many people were in the street, but stated that "It was more than three." The defendant walked away from the group alone and grabbed his waistband. Officer Lockhart agreed that "seeing young individuals grab their waistband is not unusual," but he "observed a bulge" in the defendant's front waistband as the defendant walked away. Officer Lockhart did not know the defendant had a firearm in his waistband at the time.

¶ 11    Officer Lockhart continued that the defendant walked around to the passenger side of the parked vehicle, the side furthest from the officers, and leaned down. Officer Lockhart's view was obstructed when the defendant leaned down. Officer Lockhart believed his vehicle was "moving slowly" as he observed the defendant reach down, but denied that his vehicle was past the parked vehicle at that point. Officer Lockhart never saw a firearm come out of the defendant's pants, but he did see the defendant remove a "black object" from his pants while standing. Officer Lockhart agreed that the defendant was standing in "plain view" of both Officer Lockhart and other people when the defendant removed the firearm.

¶ 12    Officer Lockhart could not recall if other people were standing near the parked vehicle. After reviewing his body camera footage, he agreed that two additional people stood near the wheel well of the parked vehicle. Officer Lockhart could not confirm that those people had not placed the firearm in the wheel well, nor could he say how long the firearm had been present. Officer Lockhart confirmed that he did not know what the "black object *** the defendant pulled from his waistband" was, but disagreed that "[o]ther people ran" when Officer Lockhart found the

firearm; rather, the defendant "was the only one who ran." No bullets or holster were found on the defendant. Officer Lockhart did not know if the firearm was swabbed or sent for forensic testing, nor did he interview anyone on the scene.

¶ 13    The defense published Defense Exhibit No. 1, Sergeant Criscione's body camera footage.[3] The video, which is included in the record on appeal and we have reviewed, begins with Sergeant Criscione in the rear passenger seat of the police vehicle. At around the 1:40 time mark in the video, Sergeant Criscione exits the vehicle and Officer Lockhart is seen removing an item from the wheel well of a parked vehicle. Officer Lockhart then hands Sergeant Criscione the item, which is clearly a black firearm. Sergeant Criscione places the firearm in the police vehicle and immediately runs in the opposite direction from Offficer Lockhart. It is unclear from the footage whether he is pursuing anyone or what he is running towards. Eventually, Sergeant Criscione runs back and returns to the police vehicle, where the defendant has been detained by Officer Lockhart and another police officer. The video ends with Sergeant Criscione removing bullets from the receovered firearm and placing the firearm and bullets in an evidence bag.

¶ 14    On redirect examination, Officer Lockhart testified that he had a clear view of the defendant as he walked to the parked vehicle, but lost sight of him when the defendant crouched. When the defendant stood back up, his hands were empty; at that point, Officer Lockhart exited his vehicle. The defendant initially walked away, but he ran when Officer Lockhart handed the firearm to Sergeant Criscione. Officer Lockhart never saw anyone else crouch or place objects by the parked vehicle, nor did he see any other black objects near where the defendant crouched.

---

[3]The report of proceedings does not indicate what portions of the footage were played. Here, we describe it in its entirety. The audio was not played at trial.

¶ 15    The State entered stipulations that the defendant did not possess a valid FOID card or concealed carry license on the date of the incident.

¶ 16    During closing arguments, defense counsel noted that Sergeant Criscione's body camera footage showed him running in the opposite direction from Officer Lockhart and the defendant, suggesting that others fled the scene at the same time.

¶ 17    At the conclusion of the bench trial, the trial court found the defendant guilty of AUUW predicated on lacking a valid FOID card and concealed carry license.[4] Following a sentencing hearing, the defendant was sentenced to 371 days' imprisonment. His motion to reconsider sentence was denied, and this appeal followed.

¶ 18                                                    ANALYSIS

¶ 1    We note that we have jurisdiction to consider this matter, as the defendant filed a timely notice of appeal. Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); R. 606 (eff. July 1, 2017).

¶ 19    On appeal, the defendant argues that the evidence was insufficient to prove, beyond a reasonable doubt, that he committed AUUW. Specifically, he claims that that evidence that he crouched near where the firearm was discovered was insufficient, on its own, to establish that he possessed the recovered firearm. He asks this court to reverse his conviction.

¶ 20    In considering a challenge to the sufficiency of the evidence, this court examines " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. Davison*, 233 Ill. 2d 30, 43 (2009) (quoting *Jackson v. Virginia*, 443

---

[4]Defense counsel filed a motion for new trial, but the record does not contain a report of proceedings for the date the motion was scheduled to be heard. During the sentencing hearing, however, the trial court noted it "already had posttrial motions."

U.S. 307, 319 (1979)). The trier of fact is responsible for weighing the evidence and credibility of witnesses and resolving any inconsistencies in testimony, and the reviewing court will not substitute its judgment on these issues. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009). A criminal conviction will not be overturned "unless the evidence is so unreasonable, improbable or unsatisfactory that it raises a reasonable doubt of defendant's guilt." *People v. Evans*, 209 Ill. 2d 194, 209 (2004).

¶ 21 To sustain a conviction for AUUW as charged, the State was required to show that the defendant possessed a firearm, the firearm was uncased, loaded, and immediately accessible, and the defendant lacked a concealed carry license and a valid FOID card. See 720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5), (a)(3)(C) (West 2020). The defendant only challenges whether the State proved the element of possession.

¶ 22 Possession of contraband may be actual or constructive. *People v. Givens*, 237 Ill. 2d 311, 335 (2010). Actual possession can be established by testimony which shows that the defendant exercised dominion or control over the contraband, including attempts to conceal or discard it. *People v. Miller*, 2018 IL App (1st) 152967, ¶ 9. Possession is an issue of fact, and "this court will not disturb the trier of fact's finding on this issue unless the evidence is so unbelievable that it creates reasonable doubt as to defendant's guilt." *Id*. ¶ 11 (citing *People v. Carodine*, 347 Ill. App. 3d 16, 25 (2007)).

¶ 23 Proof of possession of contraband often rests on circumstantial evidence. *People v. Eghan*, 344 Ill. App 3d 301, 307 (2003). "Circumstantial evidence is proof of facts or circumstances that give rise to reasonable inferences of other facts that tend to establish guilt or innocence of the defendant." *People v. Johnson*, 2018 IL App (1st) 150209, ¶ 19 (citing *People v. Saxon*¸ 374 Ill. App. 3d 409, 417 (2007)). Circumstantial evidence is sufficient to sustain a criminal conviction so

long as the evidence proves the elements of the crime beyond a reasonable doubt. *Id*. (citing *People v. Jackson*, 232 Ill. 2d 246, 281 (2009)). Where a case relies on circumstantial evidence, the State need not to prove each link in the chain of circumstances beyond a reasonable doubt, but rather, the evidence taken as a whole must satisfy the trier of fact that the defendant is guilty beyond a reasonable doubt. *People v. Hall*, 194 Ill. 2d 305, 330 (2000).

¶ 24    Here, taking the evidence in a light most favorable to the State, a rational trier of fact could find, beyond a reasonable doubt, that the defendant unlawfully possessed the recovered firearm. "The testimony of a single witness is sufficient to convict if the testimony is positive and credible." *People v. Gray*, 2017 IL 120958, ¶ 36. Officer Lockhart testified that the defendant was standing in the street with several other people when uniformed officers approached in a vehicle with "M" license plates. From approximately 15 feet away, Officer Lockhart observed the defendant grab a bulge in the front of his pants and walk towards a parked vehicle. There, the defendant removed a black object from his waistband. After crouching near the rear passenger area of the parked vehicle, the object disappeared from the defendant's hands. See *Miller*, 2018 IL App (1st) 152967, ¶ 9 (testimony showing that a defendant exercised some form of dominion or control over the contraband, including attempts to conceal or discard it, can establish actual possession). And video footage shows that when Officer Lockhart subsequently investigated the area, he retrieved *a black firearm* from the rear passenger side wheel well of the vehicle. The defendant then immediately fled on foot. See *People v. Moore*, 2015 IL App 140051, ¶ 26 ("Evidence of flight is admissible as tending to demonstrate a defendant's consciousness of guilt.").

¶ 25    Even though Officer Lockhart could not initially identify the object in the defendant's hands as a firearm, no other black objects were recovered from inside or near the wheel well. All this can reasonably support the inference that the defendant placed the firearm in the wheel well,

*i.e.*, that he attempted to conceal the firearm in his possession. These facts, coupled with the defendant's lack of a FOID card and concealed carry license, could lead a rational trier of fact to find that the defendant committed AUUW.

¶ 26    The defendant argues that this evidence was insufficient to prove the offense because it only showed that he crouched near where the firearm was discovered. He contends that the State's case rests on the inference that the defendant placed the firearm in the wheel well while out of Officer Lockhart's sight, but Officer Lockhart could not say exactly when the firearm had been placed there. The defendant also notes the lack of forensic evidence or eyewitness testimony, and argues that he fled to avoid interacting with police and not due to guilt.

¶ 27    The defendant's argument offers alternative readings of the evidence and asks this court to reinterpret them in his favor. However, a court "is not required to search out all possible explanations consistent with innocence or be satisfied beyond a reasonable doubt as to each link in the chain of circumstances." *Wheeler*, 226 Ill. 2d at 117. Moreover, this court will draw all reasonable inferences in favor of the State. *Davison*, 233 Ill. 2d at 43. The evidence here, as interpreted by the trial court, is not so unbelievable that it creates reasonable doubt as to the defendant's guilt. *Miller*, 2018 IL App (1st) 152967, ¶ 11. We therefore affirm the defendant's conviction.

¶ 28                                  CONCLUSION

¶ 29    For the aforementioned reasons, we affirm the judgment of the circuit court of Cook County.

¶ 30    Affirmed.