2024 IL App (1st) 220575-U

No. 1-22-0575

Order filed March 29, 2024

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CR 12886 |
| | ) | |
| JEREMAINE KELLEY, | ) | Honorable |
| | ) | Michael R. Clancy, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Howse and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1   *Held*:  Defendant's conviction for armed habitual criminal is affirmed where the evidence
was sufficient to prove that he unlawfully possessed a firearm.

¶ 2   Following a bench trial, defendant Jeremaine Kelley was found guilty of two counts of

armed habitual criminal (AHC), two counts of unlawful use or possession of a weapon by a felon

(UUWF), and two counts of aggravated unlawful use of a weapon (AUUW). The court merged all

counts into one count of AHC (720 ILCS 5/24-1.7(a) (West 2020)) and sentenced defendant to

seven years in prison. On appeal, defendant argues that the evidence was insufficient to prove that he possessed a firearm. We affirm.

¶ 3    Defendant was charged by indictment with two counts of AHC and two counts of UUWF for possessing a firearm while having prior qualifying convictions and two counts of AUUW based on possessing a firearm without a valid concealed carry license (CCL) or firearm owners identification (FOID) card.

¶ 4    At trial, Chicago police officer Zachary Kuta testified that on August 29, 2020, at approximately 2:12 a.m., he was in uniform and riding in an unmarked vehicle with his partner, Officer Matt Krzeptowski, who was driving. The officers patrolled the 2100 block of West Randolph Street, an area known for narcotics, gang loitering, and high violence. Kuta observed a large group of people drinking and loitering in a park and alley. As the officers approached the group, Kuta observed defendant, whom Kuta identified in court, with a clear cup containing brown liquid. Defendant made eye contact with Kuta, grabbed his waistband area, and then separated from the group, walking northbound towards Randolph Street.

¶ 5    Kuta exited his vehicle and followed defendant. The area was illuminated with artificial lighting and no obstructions prevented Kuta from seeing defendant. When Kuta was 15 to 20 feet from defendant, defendant looked back in Kuta's direction and then turned his body toward Kuta and a parked vehicle. Kuta could see defendant's waistband. With his right hand, defendant retrieved a "dark-shaped, L-shaped object," and "ben[t] down towards the [parked] vehicle, placing it down, making a metallic clanking noise." Defendant dropped the object underneath the parked vehicle, behind the front passenger tire. Kuta had previously heard a firearm hitting the ground and the "metallic clanking noise" was a similar sound. Defendant then walked away. As

Kuta jogged towards defendant, he passed the vehicle and observed a firearm "right underneath the vehicle" and "left of the tire." No other items were in or near that area. Kuta detained defendant. Krzeptowski approached them and Kuta instructed him to handcuff defendant. Kuta then retrieved the firearm, which was loaded, from the same area that he saw defendant place it. Kuta had "kept an eye" on that area and no one approached that area. Defendant did not respond to Kuta's inquiries as to whether he had a CCL or FOID card and only stated that the firearm was not his. Kuta later learned that defendant did not have a CCL or FOID card.

¶ 6     Kuta confirmed that he was equipped with a functioning body-worn camera at the time of the incident. The State published the footage from this camera, without objection. This court has viewed the footage, which is included in the record on appeal.

¶ 7     In the footage, Kuta exits his vehicle from the passenger side and walks down a short walkway between two buildings for about 10 seconds, then immediately turns right and jogs through grass and then down the sidewalk. Parked vehicles are seen to Kuta's left. About seven seconds later, defendant is visible and Kuta jogs to him. Defendant is holding a clear plastic cup and standing on the grass between the sidewalk and the street, just in front of a parked white vehicle. Kuta asks defendant, "are you drinking," and defendant replies, "yeah." Kuta asks for identification, which defendant provides. An unmarked police vehicle drives behind defendant, and Kuta gestures at the vehicle. About 46 seconds later, Kuta walks back the way he came, passing a man walking on the inner side of the sidewalk. Kuta walks to a parked silver vehicle, about two car lengths away, with his flashlight aimed at the ground near its front passenger-side tire. A dark object is visible on the ground underneath the parked vehicle. Kuta squats and retrieves a firearm from the ground underneath the parked vehicle by the front passenger-side tire.

¶ 8 Kuta confirmed that defendant cannot be seen on the footage squatting on the ground. Kuta stated that his body-worn camera was in the middle of his chest. He was walking northbound and looking eastbound in defendant's direction. When he saw defendant place the firearm under the vehicle, Kuta was behind defendant, towards the "center area."

¶ 9 On cross-examination, Kuta testified that defendant was walking about 30 feet ahead when Kuta exited the patrol vehicle. Kuta lost sight of defendant "[j]ust for a second" when defendant went around a corner and headed eastbound on Randolph Street because there was a garage or building. Kuta was 15 to 20 feet from defendant when defendant turned onto Randolph Street. Kuta jogged after defendant when he observed defendant remove the firearm from his waistband. He detained defendant about two car lengths from where he later recovered the firearm. After Kuta detained defendant, he noticed that a man was walking towards him. Kuta acknowledged that a group of people were slowly exiting the park area and then following him. He did not canvass for witnesses among the people who were following him because "[t]hey were pretty hostile."

¶ 10 The State entered the following stipulations: (1) defendant had a prior conviction for manufacture and delivery of a controlled substance (case number 2017 CF 002139); (2) defendant had a prior conviction for aggravated battery (case number 2011 CF 000361); and (3) defendant did not have a CCL or FOID card on August 29, 2020.

¶ 11 Defendant's girlfriend, Cassandra Tice, testified on his behalf and stated she had been with him the "whole night." As they were leaving the park, she realized she forgot her cellphone and walked back towards the park. When the police arrived, she was not near defendant. She next saw defendant when he was calling for her while he was with the police. Tice did not see defendant with a firearm that evening.

¶ 12 On cross-examination, Tice testified that when she walked away from defendant to retrieve her cellphone, she did not know if he had anything in his hands because she could not see his hands. She reiterated that defendant did not have a firearm.

¶ 13 The court found defendant guilty on all counts. The court found Kuta's testimony credible and clear and also found Tice candid and credible. However, the court did not find that Tice's testimony that she did not observe defendant with a firearm impeached Kuta's testimony, because she returned to retrieve her cellphone and did not see what happened on Randolph Street. The court noted that, while it "believe[d] [Kuta was] impeached on the distance," it did not "think he would be unable to observe [defendant] place that item *** on the ground." The court believed that when Kuta observed defendant place the firearm by the tire, which was not captured by his body-worn camera footage, Kuta was moving in one direction and looking in another direction. The court had "no explanation" why Kuta would run after defendant unless he saw and heard what he testified to. The court found "most important" that once defendant was secured, Kuta "goes immediately to the location where he saw [defendant] place that weapon and he immediately retrieves that weapon."

¶ 14 Defendant filed a motion for new trial, which was denied. Following a sentencing hearing, the court merged all counts into one count of AHC and sentenced defendant to seven years in prison. The court denied defendant's motion to reconsider sentence.

¶ 15 On appeal, defendant argues that the evidence was insufficient to prove beyond a reasonable doubt that he possessed a firearm because Kuta's testimony was incredible and unbelievable, and no physical evidence linked defendant to the firearm. Specifically, defendant

contends that Kuta's testimony that defendant possessed a firearm was impeached by his body-worn camera footage published at trial.

¶ 16    In considering a challenge to the sufficiency of the evidence, this court examines " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact's role is "to determine the credibility of witnesses, to weigh their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence." *People v. Williams*, 193 Ill. 2d 306, 338 (2000). It is not our function to retry the defendant. *People v. Gray*, 2017 IL 120958, ¶ 35. We will not substitute our judgment for that of the trier of fact on questions involving the weight of the evidence or credibility of the witnesses. *Id.* A conviction will not be overturned "unless the evidence is so unreasonable, improbable, or unsatisfactory" that reasonable doubt exists as to the defendant's guilt. *People v. Wright*, 2017 IL 119561, ¶ 70.

¶ 17    "The testimony of a single witness is sufficient to convict if the testimony is positive and credible." *Gray*, 2017 IL 120958, ¶ 36. "[I]t is for the fact finder to judge how flaws in part of the testimony affect the credibility of the whole." *People v. Cunningham*, 212 Ill. 2d 274, 283 (2004). A witness's testimony may be found insufficient to convict "only where the evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *People v. Corral*, 2019 IL App (1st) 171501, ¶ 72. A conviction will not be reversed simply because the evidence is contradictory or because the defendant claims the witness was not credible. *People v. Bonaparte*, 2014 IL App (1st) 112209, ¶ 41.

¶ 18    To prove AHC, the State must show that the defendant possessed a firearm after being convicted of two or more qualifying offenses. 720 ILCS 5/24-1.7(a) (West 2020). Defendant only challenges the sufficiency of the evidence establishing his possession of a firearm.

¶ 19    Possession of a firearm may be actual or constructive. *People v. Givens*, 237 Ill. 2d 311, 335 (2010). Actual possession, which is at issue here, can be established by testimony showing that the defendant exercised dominion or control over the firearm, including attempts to conceal or discard it. *People v. Miller*, 2018 IL App (1st) 152967, ¶ 9. Actual possession does not require "present personal touching" of the item. *Givens*, 237 Ill. 2d at 335. Possession is a question of fact for the trier of fact. *Miller*, 2018 IL App (1st) 152967, ¶ 11. We will not disturb the factual finding of possession "unless the evidence is so unbelievable that it creates a reasonable doubt as to the defendant's guilt." *Id.*

¶ 20    Here, the evidence was sufficient to prove beyond a reasonable doubt that defendant possessed the recovered firearm. Kuta testified that he could see defendant's waistband and saw him remove with his right hand an "L-shaped" object and drop it on the ground, underneath a parked vehicle by the front passenger tire. Kuta heard a "metallic clanking noise," which he recognized as the sound of a firearm hitting the ground. As Kuta jogged after defendant, he observed the firearm underneath the parked vehicle and to the left of the vehicle's tire. Kuta approached defendant and detained him until Krzeptowski arrived. Kuta kept an eye on the area where he had seen defendant discard the firearm and did not see anyone else near or around the vehicle. After Krzeptowski arrived, Kuta walked directly to the parked vehicle while shining his light on the front passenger tire and retrieved the firearm on the ground where he observed defendant discard it. The trial court expressly found Kuta's testimony credible, a determination we

do not reassess. *People v. Walls*, 2022 IL App (1st) 200167, ¶ 29. Kuta's credible testimony that defendant discarded the firearm was sufficient to establish that defendant possessed a firearm beyond a reasonable doubt. See *id.*

¶ 21    Additionally, Kuta's body-worn camera footage largely corroborates his version of events. Namely, it corroborates Kuta's testimony that he jogged to defendant, passed parked vehicles, and retrieved the firearm on the ground underneath a parked vehicle by its front passenger tire, which was the location he testified he observed defendant discard the firearm. Although the body-worn camera footage does not show defendant discarding the firearm underneath the parked vehicle, Kuta testified that the image was not captured because his body-worn camera was facing forward while he was looking to the side where defendant was located when defendant discarded the firearm. Kuta's body-worn camera footage is consistent with this explanation, which the trial court accepted as a reasonable explanation as to why his body-worn camera footage did not capture defendant discarding the firearm. See *People v. Swenson*, 2020 IL 124688, ¶ 35 ("[a]ll reasonable inferences are drawn in favor of a finding of guilt"). When viewing all the evidence in a light most favorable to the State, as we must, we find that a rational trier of fact could have reasonably concluded that defendant actually possessed the firearm and then discarded it on the ground underneath a parked vehicle where it was recovered. *People v. Cooper*, 194 Ill. 2d 419, 430-31 (2000).

¶ 22    Nonetheless, defendant argues that the evidence of his possession of a firearm was insufficient because portions of Kuta's body-worn camera footage impeached his testimony. Specifically, defendant contends it would have been impossible for Kuta to see defendant discarding the firearm given the considerable distance to the parked vehicle from Kuta's vantage

point and the presence of a two-story building and numerous mature, leafy trees obstructing his view.

¶ 23    In his opening brief, defendant relies on, but does not specifically ask this court to take judicial notice of, a Google map showing an arial photograph of the area to challenge Kuta's testimony that he observed defendant discard the firearm. Defendant contends that the Google map shows that Kuta was farther from defendant when he observed him than he testified, and that there were obstructions to his view. The State, however, responds that defendant cannot introduce new evidentiary material that was not considered by the fact finder during its deliberations, and that judicial notice cannot be used to allow the introduction of "extra-record materials" in reviewing a challenge to the sufficiency of the evidence. In defendant's reply brief, he asserts that judicial notice is appropriate because it has "long [been] recognized that a reviewing court may take judicial notice of maps and distances from reliable internet sites such as Google."

¶ 24    In general, a court "may take judicial notice of matters which are commonly known, or, if not commonly known, are readily verifiable from sources of indisputable accuracy." *Peters v. Riggs*, 2015 IL App (4th) 140043, ¶ 49, quoting *People v. Fisher*, 184 Ill. 2d 441, 455 (1998). Such matters include geographical facts, and "case law supports the proposition that information acquired from mainstream Internet sites such as MapQuest and Google Maps is reliable enough to support a request for judicial notice." *Riggs*, 2015 IL App (4th) 140043, ¶ 49, quoting *People v. Clark*, 406 Ill. App. 3d 622, 633 (2010). However, as our supreme court explained in *People v. Cline*, 2022 IL 126383, ¶¶ 32-33, a sufficiency of evidence analysis "must be limited to evidence actually admitted at trial, and judicial notice cannot be used to introduce new evidentiary material

not considered by the fact finder during its deliberations," because, to conclude otherwise would "wholly ignore[ ] the role of a reviewing court" in examining a defendant's guilt.

¶ 25    While defendant attempts to distinguish *Cline* on the basis that the supreme court there was considering a request to take judicial notice of scientific material to evaluate fingerprint evidence, nothing in that opinion suggests that its holding is so limited. Regardless of the nature of the material for which judicial notice is requested, the same considerations apply. "It is not the function of a court of review to retry a defendant," and we would be tasked with doing so if a party were permitted to introduce new material when challenging the sufficiency of the evidence. *Id.; People v. Brooks*, 2023 IL App (1st) 200435, ¶ 45. Accordingly, we decline to take judicial notice of the Google map submitted for the first time in this appeal.

¶ 26    Moreover, the trial court considered that Kuta was "impeached on the distance" when assessing his credibility and rejected the suggestion that Kuta would be unable to observe defendant discard the firearm. It was the trial court's function "to determine the credibility of witnesses, to weigh their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence." *Williams*, 193 Ill. 2d at 338. We will neither reassess witness credibility nor reweigh the evidence. *People v. Bradford*, 2016 IL 118674, ¶ 12.

¶ 27    Defendant also argues that the State did not present any physical evidence, such as fingerprints, linking him to the recovered firearm. However, "[p]roof of physical evidence connecting a defendant to a crime has never been required to establish guilt." *People v. Williams*, 182 Ill. 2d 171, 192 (1998). Defendant also challenges the sufficiency of the evidence of his possession of a firearm where it was based on the testimony of "only a single witness." But the State was not required to present additional evidence, as Kuta's credible testimony is sufficient to

sustain a conviction. See *Gray*, 2017 IL 120958, ¶ 36. The trial court also considered the testimony of defendant's witness and found that Tice's testimony, while credible, did not impeach Kuta's testimony. In this case, Kuta's testimony was not so unbelievable that no rational trier of fact could have accepted it. *Cunningham*, 212 Ill. 2d at 280.

¶ 28    In conclusion, the trial court's finding that defendant unlawfully possessed the firearm recovered from underneath a vehicle by the front passenger tire was not so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt. *Wright*, 2017 IL 119561, ¶ 70. Therefore, the evidence was sufficient beyond a reasonable doubt to convict defendant of AHC.

¶ 29    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 30    Affirmed.